## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARCUS RUSHELL,

               Petitioner,             CASE NO. 07-cv-15321

v.                                   JUDGE PAUL D. BORMAN
                                   UNITED STATES DISTRICT JUDGE

JOHN PRELESNIK,

               Respondent.

_____/

## OPINION AND ORDER
## (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO
## ISSUE A CERTIFICATE OF APPEALABILITY, (3) AND DENYING
## AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

This is a habeas case filed under 28 U.S.C. § 2254. On December 13, 2007, Petitioner Marcus Rushell, a state inmate currently incarcerated at the Ryan Correctional Facility in Detroit, Michigan,[1] filed a *pro se* habeas petition, alleging that he is incarcerated in violation of his constitutional rights. Following a jury trial in Wayne County Circuit Court in 2002, Petitioner was convicted of two counts of first-degree premeditated murder, MICH. COMP. LAWS § 750.316a, and felony firearm, MICH. COMP. LAWS § 750.227BA. He was sentenced to concurrent terms of life in prison for the first-degree-murder convictions and a consecutive two-year prison term for the felony-firearm conviction. For the reasons stated below, the Court will deny the petition. The Court will

_____

[1]Petitioner was incarcerated at the Richard A. Handlon Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Ryan Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

also decline to issue Petitioner a certificate of appealability and will deny him an application for leave to proceed on appeal *in forma pauperis*.

I.      **BACKGROUND**

This case arises because of a shooting that occurred on January 13, 2002, which resulted in the deaths of Daniel Ashley and Jeremy Williams. Petitioner was tried along with co-defendant Kevin Theriot, his half-brother. Trial began on July 17, 2002 and concluded on July 23, 2002. The prosecution's theory was as follows.

On the day in question, Petitioner's half-brother, Theriot, drove to a gas station on Harper Avenue in the City of Detroit. Petitioner was the passenger. Petitioner went into the station to make a purchase. As Theriot pulled into the station, another car pulled in behind him. That car was occupied by Ashley and Williams, who, according to Theriot, had stalked and attacked him since 1994. It was his opinion that they came to the station to kill him. He said he had not seen them for about a year before the incident but was aware of their presence in his neighborhood.

Ashley and Williams then left the gas station and drove down the street. Theriot and Petitioner followed them. Theriot drove and Petitioner was in the front passenger seat. According to witnesses, Theriot then pulled his car next to the victims' car on Harper Avenue. Theriot told Petitioner to lean back. He then reached across Petitioner and fired several shots into the victims' car, killing both Ashley and Williams.

Theriot's theory at trial was that he acted in self-defense because he was afraid of the victims. He testified that he drove the car, and that Petitioner told him not to do anything. He said Petitioner had nothing to do with the shooting.

Petitioner gave a statement to the police. He admitted he was the owner of the gun that killed Ashley and Williams. He said he gave the gun to his brother. Petitioner's defense at trial was that he was present but was not a participant in the shooting.

The confessions of both Theriot and Petitioner were admitted at trial, with a limiting instruction given by the trial judge.

Petitioner stated that the victims were making gang signs when his brother started shooting. He admitted his brother used his gun to shoot the victims. He said when he returned to the car from the gas station, his brother told him to hand him the gun, which he did. Petitioner said that was when the shooting started.

Theriot, in his own statement, admitted to the murder. He said he had been "beefing" with Ashley and Williams since 1994. Theriot admitted he shot the two men, who followed him and his brother into the gas station lot, because he was scared. Theriot said his brother kept telling him not to do it. Theriot said Petitioner did nothing. He admitted he was driving the car, and that he pulled the trigger of a nine-millimeter that belonged to Petitioner. However, he said that he was holding the gun all along. He did not know how many shots he fired because he went blank. He said he remembered pulling his car up alongside the victims' car when he fired the shots.

Theriot also testified at trial, where he claimed self-defense. He said he had been shot by Ashley three years earlier, and that Ashley had been "jumping him" from the time he was fourteen years old. Trial Tr. vol. III, 44, July 22, 2002. Theriot testified that the victims followed him and his brother into the gas station, and that Ashley was "throwing his hands like this (indicating)," while asking him what he wanted to do. Trial Tr. vol. III, 46, July 22, 2002. The victims made additional hand gestures at him from within their vehicle.

Theriot further testified that, as he started to pull away from the gas station, Ashley started shooting at him. He saw a gun in Ashley's right hand. He said Ashley fired shots from the driver's seat, over the passenger seat where Williams was sitting. Theriot testified that he then pulled his gun and fired back because he feared for his and his brother's lives. He testified that his self-defense decision was made with the previous shooting in mind.

Jason Rusan, a friend of both Petitioner and Theriot, testified that he was with them on the day of the incident, but in a different car. Rusan said he went into the gas station to pay for his gas, leaving Tracey Cobbs, his friend, in the car parked at the pump. He said Petitioner and his brother were parked on the other side of his car, by another pump. He came out of the station and started pumping his gas. He walked over to Petitioner and his brother's car because he thought they were talking about some women who were walking by. Instead, Theriot said to him, "[T]hat's them niggas right there," meaning the guys in the car, to which he replied, "[W]hat you talking about." Trial Tr. vol. II, 45, July 18, 2002. Rusan said he then went back to pumping gas.

According to Rusan's testimony, Petitioner got out and went into the store. Theriot told him about the situation they went through with the men in the other car, who at that time were pumping air into a tire. Theriot told him that one of them shot him or was involved with him being shot. Rusan saw Ashley and Williams make gang signs toward Theriot. He told Theriot to forget about it. Theriot told him, "[H]e was going to kill them." Trial Tr. vol. II, 47, July 18, 2002. Rusan said he told Theriot to "chill out, man, forget about it, man." Trial Tr. vol. II, 49, July 18, 2002.

Rusan said he wanted to leave but Petitioner was still in the store. He drove to the front of the store to tell Petitioner to "come on, man, let's hurry up, let's go." Trial Tr. vol. II, 49, July 18,

2002. Petitioner then got into Theriot's car. Rusan said he waited for them to pull up and then pulled up behind them. He said Theriot was driving, and Petitioner was in the passenger seat.

Rusan further testified that Theriot then pulled up to the side of the victims' car. According to his testimony, the window went down, Petitioner's seat went back, and Theriot opened fire by reaching across and shooting into the victims' car. Rusan said Theriot fired five shots and then pulled off. He said he just sat there, not knowing what to do. The victims' car drove across the street, hitting a pole and a building. He drove off. He testified that Theriot told him to "lay low." Trial Tr. vol. II, 119, July 18, 2002.

Dr. Carl Schmidt, Deputy Chief Medical Examiner for Wayne County, performed the autopsies on Williams and Ashley, concluding that they died of multiple gunshot wounds. As to Williams, one of the wounds was in the right forehead, the second wound was behind the left ear, and the third wound entered in the left temple and exited on the right temple, going through the brain. One of the three gunshot wounds to the back of Williams's head was a near-contact wound, which meant that the gun was within millimeters or fractions of an inch from Williams's skin. As to Ashley, he suffered two wounds, one to the left shoulder, traversing both lungs, and causing massive bleeding, and another to the right shoulder. It was Dr. Schmidt's opinion that both men died of multiple gunshot wounds.

Tracey Cobbs, who was riding with Rusan on the day in question, also testified. Her testimony corroborated much of Rusan's testimony. She said both Petitioner and Theriot had guns before they went to the gas station. Theriot told her that the victims were the "two guys that had geeked it up for him to be shot." Trial Tr. vol. II, 155, July 18, 2002. She said Petitioner agreed. However, Cobbs said when Theriot first made that statement Petitioner was not present. The second

time Cobbs heard Theriot make that statement, she saw him with a gun, and, at that time, Petitioner was present and said nothing.

After her encounter with Theriot, Cobbs returned to Rusan's car and told him what Theriot said. According to Cobbs, the victims then got in their car and pulled past Rusan's car, so both the victims' and Theriot's cars were parked next to each other. She said Petitioner then pushed his seat back. Theriot reached over him and shot into the victims' car, five or six times. Cobbs did not see the victims throw gang signs.

Detroit Police Officer and Evidence Technician Lori Briggs testified that she collected two jackets, a spring cell phone, and a bullet fragment from Ashley's car.

Petitioner did not testify. The jury found him guilty.

Following his sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, alleging:

> I.    [Petitioner] was deprived of his [Fifth and Fourteenth Amendment] rights of due process when he was tried jointly with another co-defendant.
>
> II.   [Petitioner] was deprived of his [Sixth Amendment] right to the effective assistance of counsel when his trial counsel failed to object to trial consolidation or to move for severance.
>
> III.  [Petitioner] was deprived of his [Fifth and Fourteenth Amendment] rights of due process when the court failed to charge the included offenses of voluntary manslaughter.

The Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Rushell*, No. 246022, 2005 WL 387462 (Mich.Ct.App. Feb. 17, 2005). Subsequently, he filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claims. On October 31, 2005, the Supreme Court denied the application because "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Rushell*, 474 Mich. 900, 705

N.W.2d 130 (2005).

Petitioner then filed a motion for relief from judgment with the trial court, pursuant to Michigan Court Rule 6.500 *et. seq.*, alleging the following two claims: (1) the trial court erred in permitting co-counsel to stand in for Petitioner's attorney during its instructions to the jury, with his consent, and (2) appellate counsel was ineffective by failing to raise the issue of ineffective assistance of trial counsel on appeal. On March 1, 2007, the trial court denied the motion. *People v. Rushell*, No. 02-002708-02 (Wayne County Circuit Court, Mar. 1, 2007).

Petitioner filed a delayed application for leave to appeal the trial court's decision with the Michigan Court of Appeals, alleging:

I.      [Petitioner] was denied a fair trial, his right to due process, and his right to the effective assistance of counsel when his trial counsel was absent during critical stages of the trial and there was an actual conflict of interest when co-defendant's counsel stood in for defense counsel.

II.     The trial court abused its discretion and committed reversible error when it refused to grant newly appointed counsel a continuance to adequately prepare for trial, the court failed to conduct a proper colloquy with [Petitioner] to determine if his waiver of counsel was knowingly and intelligently made, and the court allowed co-representation by co-defendant's attorney in violation of controlling court rule and case law.

III.    [Petitioner] was denied his right to due process and the effective assistance of appellate counsel when his appellate attorney failed to present a claim of ineffective assistance of trial counsel and failed to address the trial court errors.

On July 19, 2007, the Court of Appeals denied Petitioner's delayed application. *People v. Rushell*, No. 277563 (Mich.Ct.App. July 19, 2007). Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court. On November 29, 2007, the Supreme Court denied his application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Rushell*, 480 Mich. 955, 741 N.W.2d 310 (Nov. 29, 2007).

Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition, raising what appears to be the claims raised in his direct appeals and in his motion for relief from judgment and appeals thereafter.

## II.    ANALYSIS

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of state-court decisions.  Under the AEDPA, a federal court's review of a habeas proceeding is limited.  A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

With that standard in mind, the Court proceeds to address Petitioner's claims.

### B.    Joint-Trial and Ineffective-Assistance-of-Trial-Counsel Claims

In his first habeas claim, Petitioner argues that he was prejudiced by being tried jointly with

his half-brother.  In his second claim, he asserts that trial counsel was ineffective for failing to object to trial consolidation or to move for severance.  He raised these claims on direct appeal but the Court of Appeals, the last court to issue a reasoned decision regarding these issues, rejected them, finding that they were not preserved for review.  The Court of Appeals reviewed the claims for plain error:

A defendant does not have an automatic right to a separate trial.  A strong policy exists that favors joint trials in the interest of justice, judicial economy, and judicial administration.  The trial court has the discretion to determine whether to sever or join defendants.  MCR 6.121(C) mandates severance when a defendant demonstrates that a separate trial is necessary to avoid prejudice to his substantial rights.  Severance is necessary when the defenses of multiple defendants are mutually exclusive or irreconcilable, not merely inconsistent.  Furthermore, "incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice."

Co-defendant Theriot's theory of the case was that he shot the victims, Daniel Ashley and Jeremy Williams, in self-defense or in defense of his half-brother, defendant Rushell.  Defendant Rushell's theory of the case was that he did not participate in or have advance knowledge of the shooting.  Defendants did not accuse each other as part of their defenses.  To support his argument on appeal, defendant Rushell cites co-defendant Theriot's trial testimony, in which he stated, "I shot them because I was scared.  They been messing with me for a long time."  Contrary to defendant Rushell's assertion that co-defendant Theriot's statement exculpated himself at the expense of incriminating defendant Rushell, co-defendant Theriot actually admitted that he was the shooter both in his prior statement to police and in his trial testimony.  Co-defendant Theriot's statement and testimony minimized defendant Rushell's responsibility and role in the events.  Co-defendant Theriot stated that he did not ask defendant Rushell for his gun because the gun was already on his person and that he never told defendant Rushell that he was about to shoot Ashley and Williams.  Co-defendant Theriot also stated that defendant Rushell did not participate in the shooting and pleaded with him not to shoot.  In light of this evidence, we conclude that their defenses were not mutually exclusive or even antagonistic.

Moreover, there was no evidence that joinder affected the outcome of the proceedings.  Because defendant Rushell was charged under an aiding and abetting theory, the risk of prejudice to his case was reduced.  In addition, defendant Rushell's constitutional right of confrontation was not affected because co-defendant Theriot testified at trial and was subject to cross-examination.  Furthermore, there was no indication that defendant Rushell was restricted in offering a defense.  There was also no chance that the jury would be confused since the factual evidence

> pertained to both defendants. Because defendant Rushell failed to demonstrate that his substantial rights were prejudiced and that severance was necessary to prevent the prejudice, we hold that the trial court did not err by jointly trying defendants.

*Rushell*, 2005 WL 387462, at *1-2 (citations omitted).

Petitioner's claim alleging error in trying him jointly is procedurally defaulted. The failure to properly raise and preserve issues in the trial court is a recognized and firmly established independent and adequate ground in Michigan for refusing to review trial errors. *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994). The United States Supreme Court has recognized that the failure to contemporaneously object is generally a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

The fact that the state appellate court may have examined whether the alleged improper evidence resulted in "manifest injustice" or "plain error" does not affect the preclusive effect of the procedural bar. The Sixth Circuit has held that the failure of a criminal defendant to contemporaneously object constitutes a procedural default even though an appellate court subsequently reviewed the matter for manifest injustice. *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989). Plain-error review by a state appellate court constitutes enforcement of a state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005). Moreover, an alternative ruling by the state appellate court noting both lack of contemporaneous objection and lack of merit is still subject to the procedural default rule. *Scott v. Mitchell*, 209 F.3d 854, 877 (6th Cir. 2000).

When a petitioner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can

demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

In this case, Petitioner alleges that cause for his default was ineffective assistance of trial counsel. He also raised this as an independent ineffective assistance of counsel claim in his direct appeal but the Court of Appeals rejected it, stating:

> To demonstrate ineffective assistance of counsel, defendant Rushell must show that separate trials were required. We held that there was no basis for the trial court to grant severance. Because a motion to severe [sic] would have been futile, we conclude that defense counsel did not err by failing to request severance.

*Rushell*, 2005 WL 387462, at *2 (citations omitted).

"Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Lucas*, 179 F.3d at 418 (citing *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). In *Murray v. Carrier*, 477 U.S. 478, 487 (1986), the Supreme Court held that attorney error is not cause for procedural default analysis unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* strongly presumes that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Accordingly, the inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. Courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996). Even

11

when counsel's performance is deficient under this standard, constitutionally ineffective assistance of counsel requires a showing of actual prejudice. *Strickland*, 466 U.S. at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In this case, Petitioner cannot establish cause to excuse his procedural default because his underlying claim is without merit.

A defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Nor does he have a right to a separate trial merely because defendants present antagonistic defenses. *United States v. Day*, 789 F.2d 1217, 1224 (6th Cir. 1986) (holding that absent some indication that the alleged antagonistic defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance). Courts should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Granting or denying severance is within the trial judge's discretion. *Glinsey v. Parker*, 491 F.2d 337, 343 (6 Cir. 1974). A state trial court's alleged abuse of discretion, without more, is not a constitutional violation. *See Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995).

A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden. *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988). As a general rule, joint trials are favored. *See United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984). Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).

The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials. *See United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990).

In this case, the Court of Appeals properly noted that a defendant does not automatically have a right to a separate trial and a strong policy exists that favors joint trials. Moreover, the co-defendants in this case had different theories of the case and did not accuse each other as part of their defenses and, as the Court of Appeals noted, there was no evidence that joinder affected the outcome of Petitioner's proceedings.

The Court concludes that the Court of Appeals's determination was reasonable and supported by the record. Petitioner cannot show deficient performance on the part of his attorney for failing to request severance. Because Petitioner cannot establish deficient performance, there is no need to consider the prejudice component of *Strickland*. Even if that were considered, Petitioner cannot demonstrate prejudice because even if his attorney had requested severance, such a request would not have been granted. Petitioner has failed to show cause for his default.

"Even in the absence of cause and prejudice, a petitioner may overcome a procedurally defaulted claim upon a showing of actual innocence." *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995) and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The fundamental miscarriage of justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (citing *Murray*, 477 U.S. at 496). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a

claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. In other words, the petitioner must show "that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). In this case, Petitioner has made no such showing.

Additionally, to the extent that Petitioner alleges that his rights under the Michigan Constitution or Michigan law were violated, such claims are not cognizable upon federal habeas review. A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States" 28 U.S.C. 2241(c)(3); 28 U.S.C. 2254(a), and habeas relief may not be based upon perceived error of state law. *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)).

Accordingly, Petitioner's claim alleging that he was denied a fair trial because he was tried jointly with his half-brother is procedurally defaulted and he has failed to show cause and actual prejudice to excuse the default, or that failure to review his defaulted claim will result in a fundamental miscarriage of justice. The Court also finds that the underlying claims are not cognizable or without merit. Petitioner is not entitled to habeas relief regarding these claims.

### C.     Voluntary-Manslaughter-Instruction Claim

In his next habeas claim, Petitioner alleges that his state and federal due process rights were violated when the trial court failed to instruct the jury on voluntary manslaughter. In addressing, and rejecting this claim, the Court of Appeals also found that the issue was not preserved for review

and reviewed it for plain error, stating:

> To receive an instruction on a lesser offense, the lesser offense must be a necessarily included lesser offense that is supported by the evidence. Unlike a cognate lesser offense, which includes some elements distinct from the greater offense, a necessarily included lesser offense is an offense that includes all elements of the greater offense. In other words, it would be impossible to perpetrate the greater offense without first having perpetrated the lesser offense.

> First-degree murder, as charged in this case, requires proof "that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." To prove premeditation and deliberation, a prosecutor must establish that the defendant killed the victim after a sufficient time for a "second look." Voluntary manslaughter contains the following elements: "(1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions." "Murder and manslaughter are both homicides and share the element of being intentional killings." However, to reduce murder to voluntary manslaughter, there must be sufficient evidence of adequate provocation, particularly provocation causing a reasonable person to act out of passion instead of reason. The elements of voluntary manslaughter are subsumed in murder, with murder having the added element of malice. Because the elements of manslaughter are included in the offense of murder, manslaughter is a necessarily included lesser offense of murder. However, an instruction on a necessarily included lesser offense is precluded unless it is supported by a rational view of the evidence.

> In this case, defendant Rushell was charged under an aiding and abetting theory as one who had knowledge that the principal intended for the crime to occur and gave assistance. Defendant Rushell's charges under the aiding and abetting theory were related to co-defendant Theriot's charges as the principal. Co-defendant Theriot asserted a theory of the case that rested on a claim of self-defense and defense of others. According to co-defendant Theriot's testimony, he did not possess an intent to kill at the time of the shooting. Therefore, an instruction on voluntary manslaughter, which requires proof of an intentional killing, was not supported by co-defendant Theriot's own theory of the case.

> Moreover, the facts in evidence did not suggest any adequate provocation to negate the element of malice. There was evidence that co-defendant Theriot informed witnesses Jason Rusan and Tracey Cobbs that he was about to kill the victims. Rusan saw co-defendant Theriot drive to the side of the victims' car. He also observed the window of co-defendant Theriot's car come down, and defendant Rushell's seat move back. Rusan then saw co-defendant Theriot reach across defendant Rushell's seat and shoot five times at the victims. Similarly, Cobbs testified that she saw defendant Rushell put his seat back and co-defendant Theriot

reach across and shoot about five or six times into the victims' vehicle. Officer Briggs testified that the evidence collected from the victims' vehicle included two jackets, a cellular phone and a bullet fragment. However, she did not testify to recovering a gun from the car. As the trial court noted, even if the jury believed co-defendant Theriot's testimony that one of the victims had a gun and shot first, co-defendant Theriot's reaction was self-defense, not provocation. Because a rational view of the evidence did not support a voluntary manslaughter instruction, the trial court did not err in failing to instruct the jury on the necessarily included lesser offense.

Furthermore, this Court has held that "where a defendant is convicted of first-degree murder, and the jury rejects other lesser included offenses, the failure to instruct on voluntary manslaughter is harmless." Although the trial court instructed the jury of the lesser offense of second-degree murder, the jury found defendant Rushell guilty of first-degree murder. Even assuming that the trial court erred in failing to instruct the jury on the necessarily included lesser offense of voluntary manslaughter, such error was harmless.

*Rushell*, 2005 WL 387462, at *3-4 (citations omitted).

As with the claims discussed above, this claim is procedurally defaulted because it appears that trial counsel failed to properly preserve this issue, and the Court also finds that Petitioner has failed to allege or establish cause and prejudice for the default, or show that failure to review his claim would result in a fundamental miscarriage of justice. Regardless of the default, the Court also finds that the claim is not cognizable and without merit.

While the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, *Beck v. Alabama*, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in noncapital cases. *Beck*, 447 U.S. at 638 n.14; *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (same). Here, Petitioner cannot show that the state court's failure to instruct on the lesser included offense of manslaughter was contrary to or an unreasonable application of clearly established Supreme Court precedent where Supreme Court precedent does not require a lesser included offense instruction in noncapital cases. Even if

his claim was cognizable, it is without merit.

A defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)). *Mathews* is not controlling if there is no basis on which to overcome the state court's factual findings that there was insufficient evidence to support the defendant's theory. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001). A jury instruction on a lesser-included offense "is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982)).

Here, the Court of Appeals set forth the applicable Michigan law regarding the elements of first-degree murder and voluntary manslaughter in its opinion. It then reasonably determined that the facts presented in Petitioner's case did not support the giving of a voluntary manslaughter instruction, and that any error in failing to give such an instruction was harmless, in light of the jury finding Petitioner guilty of first-degree murder. Moreover, the trial court's failure to instruct the jury on a lesser included offense in a noncapital case is "not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).

Petitioner had no federal constitutional right to jury instructions for the lesser included offense of voluntary manslaughter. Accordingly, the Court finds that he is not entitled to habeas relief on this claim.

**D.    Remaining Claims**

In his remaining claims, Petitioner asserts: (1) that his trial counsel was absent during critical stages of the trial and that there was an actual conflict of interest when his half-brother's counsel stood in for his attorney, and (2) that the trial court erred when it denied trial counsel's request for a continuance, when it failed to conduct a proper colloquy with him to determine if his wavier of counsel was knowing and intelligent, and when it allowed co-representation by his half-brother's attorney. He also alleges that appellate counsel was ineffective for failing to raise the foregoing claims on direct appeal. These claims were not raised in Petitioner's direct appeal to the Michigan Court of Appeals and the Michigan Supreme Court. Rather, they were raised for the first time in his motion for relief from judgment. Following the denial of his post-conviction motion, the Court of Appeals and the Supreme Court, the last state courts rendering judgment on all of the claims, both denied relief on the grounds that Petitioner had failed to demonstrate entitlement to relief under Mich.Ct.R. 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is adequate and independent. *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

The Sixth Circuit recently held that the form orders used by the Michigan appellate courts

in this case are unexplained because they are ambiguous as to whether they refer to a procedural default or the denial of right on the merits. *Guilmette v. Howes*, --- F.3d ---, 2010 WL 4117281 (6th Cir. 2010). It stated:

> Brief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar. We reach this result because holdings from the Michigan courts indicate that the language used by such summary orders can refer to the petitioner's failure to establish entitlement to relief either on the merits or procedurally, and such ambiguity demands a determination that the orders are not explained. A habeas petitioner procedurally defaults a claim if:
>
> > (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.
>
> *Tolliver v. Sheets*, 594 F.3d 900, 928 n. 11 (6th Cir. 2010) (citing *Maupin v. Smith*, 785 F.3d 135, 138 (6th Cir. 1986)). The second part of this rule requires federal courts to determine the basis on which state courts rejected a given claim, and this court has struggled with this interpretive task in the context of Michigan court orders citing Rule 6.508(D). *See*, e.g., *Alexander v. Smith*, 311 F.App'x 875, 882 (6th Cir. 2009) (discussing how an "apparent conflict within this circuit's precedent" has "[c]omplicat[ed] matters" with respect to this question).

*Guilmette*, 2010 WL 4117281, at *2. Therefore, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536; *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004). The miscarriage-of-justice exception

only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup*, 513 U.S. at 327).

In considering and denying Petitioner's motion for relief from judgment, the trial court determined that Petitioner could have raised the issues he raised on appeal. The trial court also deemed Petitioner's claims meritless:

> Rushell now . . . [claims] it was ineffective assistance of counsel for his brother's attorney to represent him when the court instructed the jury on the law that applied to the case and the answer to notes of the jury. Rushell consented to that representation because an unforeseen personal matter arose regarding his attorney, Charles Marr. Mr. Marr moved the court permit him to attend to the emergency. Rushell consented to that motion and his half[-] brother's attorney, David Cripps, one of the most experienced attorneys in this area, agreed to represent Rushell during the subsequent trial proceedings.

> The transcript shows Rushell consented that Mr. Cripps, counsel for co-defendant Theriot, represent him during the jury instructions. The record also shows there was no conflict of interest.

> Rushell was represented by Mr. Marr, his own counsel, during all phases of the trial until the instructions were given to the jury. Marr went over the jury instructions with co-counsel, the prosecution and the court prior to them being given by the court to the jury. Rushell has not demonstrated any conflict which would preclude Theriot's counsel from representing him during this phase of the trial. Rushell now seeks to have this court find it is a waiver of counsel per se that another attorney represented him for a limited time and purpose. It was not error for co-counsel to represent Rushell during jury instructions. Rushell also contends it was ineffective assistance of counsel for Cripps to represent him.

> * * *

> Rushell has cited no fact to support his allegation that he was prejudiced in any manner by this limited joint representation which he consented to. Rushell has cited no fact to support any legal or factual conflict between he and his brother at

trial. In short, Rushell seeks relief from judgment on the basis that his consent to permit his brother's attorney to represent him during the court's jury instructions to the jury and answering of notes of the jury by the court is per se reversal error. Rushell has cited no authority for this proposition. Indeed, it would be anomalous to permit defendant to base reversible error upon his consent to such representation. Moreover, defendant has demonstrated no error resulting from this limited representation. The court will not presume a conflict where none is alleged or demonstrated in fact.

* * *

Defendant also seeks to have the court grant him relief from judgment on the basis that his attorney was not adequately prepared for trial. There is no fact of record to support this. Counsel was appointed for defendant Rushell after Rushell asked the court to remove his prior attorney. The court granted Rushell's request and appointed substitute counsel. No request for an adjournment was made by Mr. Marr alleging he could not proceed nor is there any such representation made in the record. More importantly, there is no valid reason why this issue, if viable, could not have been raised on appeal. MCR 6.508(D)(3) provides that this court is precluded from granting relief where the issue presented in the motion could have been raised on appeal. The defendant has not cited any good cause or actual prejudice which would be an exception to the rule that the matter could have been raised on appeal.

*Rushell*, No. 02-002708-02, at *4-8.

Accordingly, Petitioner's remaining claims are procedurally defaulted. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *See Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense."

*Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy []. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754 (footnote omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate

counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal.  *Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal. The Court finds that Petitioner has failed to demonstrate that the issues that were allegedly ignored by appellate counsel on direct appeal were clearly stronger than those that were presented and he has failed to overcome the strong presumption that his appellate counsel was competent.  That was also the determination by the trial court that denied Petitioner's motion for relief from judgment.

A look at the claims that Petitioner contends should have been raised reveals that they are without merit, as the trial court aptly determined.  He alleges that his attorney was absent during the reading of the jury instructions, but the record reveals that Petitioner, after being asked by the court, waived his attorney's presence and agreed to having his half-brother's attorney stand in for his attorney during the instructions.  The record also reveals that Petitioner's trial attorney, prior to leaving for an apparently urgent personal emergency, had reviewed and approved of the instructions.

Accordingly, the Court finds that Petitioner has failed to establish that his waiver was not knowing and intelligent or that the trial court was required to engage a particular colloquy with him on this issue, or that any actual conflict of interest arose when his half-brother's attorney stood in during the court's reading of the jury instructions.  He has not shown that the trial court was required to bring to a halt the proceedings or to appoint another attorney under the circumstances of this case, particularly where he agreed to allowing his attorney to leave and to having his half-brother's

attorney, who was an experienced attorney, stand in for the reading of the jury instructions that had already been reviewed and approved by his attorney.

Petitioner has also failed to show that his claim that his trial attorney was not prepared for trial or that the trial court erred in denying any request counsel may have made for a continuance on the first day scheduled for trial; the record does not indicate that Petitioner's attorney was not prepared for trial.

Although Petitioner asserts that appellate counsel did not provide effective assistance given the failure to raise the additional claims in his appeal of right, that argument does not constitute sufficient cause to excuse the procedural default. Here, the issues appellate counsel did raise on direct appeal were well argued, and the Court of Appeals issued a thorough opinion addressing the issues. Petitioner is unable to demonstrate that appellate counsel was unreasonable in failing to assert the additional claims in the appeal of right, or had counsel asserted the additional claims, the results on appeal would have been different. *See Jones v. Barnes*, 463 U.S. 745 (1983).

If a petitioner fails to establish cause for a procedural default, the court need not determine whether prejudice occurred because both are necessary to excuse a procedural default. *Murray*, 477 U.S. at 494-95. When a petitioner fails to establish cause and prejudice for a procedural default, relief may be granted only if the petitioner can show that refusal to hear his claims will result in a fundamental miscarriage of justice. *Id.* at 495. See argument section C, *infra*. Petitioner has made no argument and presents no new evidence to show that he is actually innocent of the crime for which he is in custody.

This Court cannot grant relief to Petitioner on his procedurally-barred claims because he has failed to demonstrate cause and prejudice and has failed to make a showing of actual innocence "so

strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316. Accordingly, Petitioner's remaining habeas claims are procedurally barred.

### E. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Petitioner's first three claims debatable or wrong. Nor would reasonable jurists debate whether the Court's procedural-default ruling regarding his remaining claims was correct. The Court therefore declines to issue Petitioner a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis*.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 13, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 13, 2010.


S/Denise Goodine
Case Manager